JAMES v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

DIVISION TWO.

1. Railroad: NEGLIGENCE: INSTRUCTION.  In an action against a railroad company for damages for personal injuries, which, it is alleged, were received because of a defective platform, an instruction is erroneous which assumes and affirmatively asserts that it was negligence for defendant to permit a hole to remain in such platform.

2. ——: ——: ——.  It should have been left to the jury to determine from the evidence whether the hole in question was dangerous or not, regard being had to the uses to which the platform was put, and whether defendant failed to exercise that care with reference to the hole which a person of ordinary prudence would have exercised under similar circumstances.

3. Practice: INSTRUCTIONS.  Instructions which, as a whole, present seemingly conflicting and contradictory theories, and which are calculated to mislead the jury to the prejudice of a party, are erroneous, and should not be given.

*Appeal from Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED AND REMANDED.

*R. T. Railey* for appellant.

(1)   Instruction, numbered 1, given on the part of plaintiff is erroneous for several reasons:  *First.*

Because the "hole" in the platform was not the approximate cause of the injury. *Hudson v. Railroad*, 101 Mo. 13 ; *Mathiason v. Mayer*, 90 Mo. 586 ; *Stepp v. Railroad*, 85 Mo. 233. *Second.* Because defendant owed plaintiff no duty in regard to the hole. *Larmore v. Iron Co.*, 101 N. Y. 392 ; *Severy v. Nickerson*, 120 Mass. 306. *Third.* Because said instruction assumes as a matter of law, that the hole mentioned therein was unsafe and dangerous, instead of submitting the question for the determination of the jury, as an issue of fact. 2 Thompson on Trials, sec. 2295, and cases cited ; *Matthews v. Railroad*, 26 Mo. App. 89 ; *State v. Wheeler*, 79 Mo. 366 ; *Wilkerson v. Thompson*, 82 Mo. 328 ; *Bank v. Crandall*, 87 Mo. 212 ; *Childrey v. Hunnington*, 12 S. E. Rep. (W. Va.) 536. We venture the assertion that a large number of the sidewalks of every city of the fourth class in this state, are made of "rafting" lumber containing "holes" from an inch and a half to two inches in diameter. Such walks are used by the public daily without being considered unsafe or dangerous. We insist that the court, under the circumstances of this case, had no right to declare as a matter of law, in view of defendant's general denial in the answer, that the hole was dangerous *per se.* The mere fact that a hole existed, and an injury followed, does not necessarily show that the hole was dangerous or unsafe. *Nolan v. Shickle*, 3 Mo. App. 305 ; *Shultz v. Railroad*, 36 Mo. 32. The last case has never been questioned as to the foregoing principle. (2) Plaintiff's second instruction is erroneous. *Henry v. Railroad*, 76 Mo. 288 ; *Lewis v. Railroad*, 54 Mich. 56 ; *Brown v. Railroad*, 20 Mo. App. 224 ; Wharton on Negligence, secs. 134, 138 ; Cooley on Torts, pp. 70, 71 ; *Mire v. Railroad*, 44 Am. & Eng. R. R. Cases, 500 ; Bishop on Non-Contract Law, secs. 42, 43. (3) The instructions taken as a whole are conflicting and contradictory and prejudicial to defendant.

*Burton & Wight* for respondent.

(1) Defendant's objections to instruction, numbered 1, are not well taken. *First.* The hole in the platform was the proximate or concurrent cause. *Bassett v. St. Joseph*, 53 Mo. 290 ; Cooley on Torts, pp. 78, 79. *Second.* Defendant owed plaintiff a duty. *Doss v. Railroad*, 50 Mo. 36 ; *Larmore v. Iron Co.*, 101 N. Y. 392. *Third.* The instruction does not assume that the hole was unsafe and dangerous. It submits to the jury the further question whether plaintiff's foot was knocked into the hole and injured. Defendant tried the case on the theory that defendant had been negligent in the matter of the platform, and that the plaintiff ought not to recover because he knew of such negligence. When testimony is clear and conclusive, an instruction may assume the truth of the fact sworn to, and it will not be reversible error. *Barr v. Armstrong*, 56 Mo. 577 ; *Caldwell v. Stephens*, 57 Mo. 589 : *Mansfield v. Pollock*, 74 Mo. 185 ; *Fields v. Railroad*, 80 Mo. 203 ; *Carroll v. Railroad*, 88 Mo. 239 ; *Hughes v. Monty*, 24 Iowa, 499 ; *Hern v. McCaughn*, 32 Miss. 17 ; *Lamar v. Williams*, 39 Miss. 342 ; *Farquhar v. Toney*, 5 Humph. 502 ; *Mathews v. Railroad*, 26 Mo. App. 82 ; *State v. Moore*, 101 Mo. 316. Plaintiff does not claim as assumed by defendant that the platform was dangerous merely because it was built of planks with auger holes in them. His sidewalk suggestion is not applicable. (2) Defendant's objection to plaintiff's instruction, numbered 2, is not well taken. (3) Instruction, numbered 3, is not erroneous. It is self-evident that the speed of the train must have given momentum to the mail sack, thereby concurrently, if not wholly, causing plaintiff's foot to be knocked into the hole in the platform. Defendant was guilty of negligence *per se* in running its train at a rate of speed prohibited by the ordinance. *Fath v. Railroad*, 39 Mo. App. 450, and cases cited. (4) Instruction, numbered 4, is not

open to defendant's verbal criticism.     The instructions,. as a whole, properly declare the law.

THOMAS. J.—Plaintiff recovered judgment against defendant in the circuit court of Vernon county for $8,000, for personal injuries, and defendant appeals. The facts as disclosed by the record in this case are in substance as follows :    In June, 1886, the defendant company was operating and controlling the Missouri, Kansas & Texas railway which runs through Appleton City, St. Clair county, Missouri.    The railroad runs north and south through that city, and the station platform there was constructed of what is known as rafting lumber, which had auger holes in it from an inch and a half to two inches in diameter.    This lumber was old and had been patched frequently, and the platform generally was much out of repair.    It was about three feet high and ten feet wide.    Plaintiff kept a hotel near by, and as a rule went to the station on the arrival of each train to see guests off and to solicit custom for his hotel.

On the night of June 29, 1886, the south-bound passenger train, which was due, according to schedule time, at Appleton City at nine P. M., was two hours late.    Plaintiff had three or four guests at his hotel, and he went to the station on the arrival of the train with a lantern to show them the way.    He also took some letters to put on the mail coach. The plaintiff reached the platform at the south end, and one T. P. Morgan was there by his side, his guests being in advance of him, but how far does not appear.    Plaintiff and Morgan walked north on the platform till they got opposite the station house.    The train came from the north at the rate of twelve or fifteen miles per hour, in violation of an ordinance of Appleton City, fixing the maximum rate of speed through the city at five miles per hour.    Plaintiff and Morgan walked side by side, Morgan being next to the railroad and plaintiff being about four feet from the track.

Plaintiff was looking for the mail coach to mail his let-
ters, and not seeing the mail coach he concluded it had
passed him, and he remarked to Morgan that "it didn't
make any difference as the letters could be mailed in the
morning." He continued to walk north, and the mail
agent threw out of the car a leather mail pouch, which
struck plaintiff on the knee and dished his knee-joint
so. that he was injured. There was an auger hole near
where plaintiff was struck which had been worn by run-
ning trucks and rolling trunks over it until it was con-
siderably larger than it was at first; so large that the
heel of a man's shoe would go in it. It was a clear star-
light night, but no moon. The platform had no light
except a signal light, and the lamps in the station
house. Plaintiff had a lantern on his arm, and at least
two other parties had lanterns also on the platform.
Plaintiff was perfectly familiar with the platform and
its surroundings, having kept a hotel near by for over
ten years, and having been for that length of time in the
habit, as a rule, of going to the station many times a
day. He also knew that the mail agents habitually
pitched the mail pouches from the cars to the platform.
Plaintiff's theory is that his heel was driven by the mail
pouch into the hole in the platform at the point where
he was struck, and that his foot was thus held, so that
the whole force of the momentum of the pouch was
spent on his knee, causing the injury.

I.   Defendant contends that the trial court misdi-
rected the jury. On the part of the plaintiff, the court,
by instructions 1 and 6, in substance told the jury that
it was the duty of defendant to keep its platform at
Appleton City in such condition and repair as to make
it reasonably safe for those who might rightfully come
upon it, and if it allowed a hole in the platform to
remain unrepaired after it knew of its existence or by the
exercise of care, watchfulness and prudence might have
known of it, and that plaintiff's foot was knocked into
this hole by the mail pouch by which plaintiff was injured

"then defendant was guilty of negligence in the matter of the existence of said hole," and that if *such* negligence directly caused the injury the verdict would be for plaintiff, provided "the injury was not caused or contributed to by any fault, carelessness or negligence of plaintiff."

This charge is erroneous, for it assumes, and indeed affirmatively asserts, that it is negligence to permit *a hole* to remain in a railroad station platform. The court ought to have left it to the jury to determine from the evidence whether the hole in question was dangerous or not, regard being had to the uses to which the platform was put, and whether defendant failed to exercise that care in reference to that hole, which a person of ordinary prudence would have exercised under similar circumstances.

Besides this error, we think the instructions, taken as a whole, were well calculated in many other respects to mislead, and probably did mislead, the jury to the prejudice of the defendant. The issues were not clearly and sharply defined and presented, so that the ordinary juryman, not versed in legal phraseology, could readily comprehend them. There are seemingly conflicting and contradictory theories presented by the instructions in this case, which the most astute lawyer or judge would find difficulty in reconciling, and which we might very well assume, the jury did not reconcile, and, therefore, did not understand. As an illustration of what we mean we here put in juxtaposition the fourth instruction, given on behalf of plaintiff, and the sixteenth, on behalf of defendant, as follows:

"4. You are further instructed that, if you shall believe from the evidence that on the twenty-ninth day of June, 1886, the plaintiff was the keeper of a hotel at said Appleton City, then he had a right to go to and upon said platform of the depot, to aid and assist any of his guests in going to or taking the train. In this connection you are further instructed that, although you may believe from the evidence that the plaintiff knew that there were holes in said platform, still that will not preclude him from a recovery in this action, unless his foot was knocked into said hole by reason of some carelessness, fault or negligence of his own."

"16. The court instructs the jury that, if they believe from the evidence that the plaintiff was well acquainted, and familiar, with the defendant's depot at Appleton City, and knew the manner in which the business of running trains, delivering mail and the like was conducted, and the condition of the depot platform, and the surroundings of the place, then it was the duty of plaintiff to have used care and caution not to place himself in an exposed position where he might. be injured ; and, if the jury believe he did not exercise care and caution, taking his knowledge into consideration, and that as a result he was injured by a government postal clerk throwing a mail bag against him, then he cannot recover in this case."

Instruction, numbered 16, seems to be plain enough, but what the court meant in instruction, numbered 4, by telling the jury that plaintiff's knowledge of the existence of "holes in the platform" would not preclude him from recovery in this action, "unless his foot *was knocked* into the hole by reason of some carelessness, fault or negligence of his own," we will not undertake to say. Instructions ought to be so framed as to instruct, and not mislead.

II. The defendant at the close of the case interposed a demurrer to the evidence, which was overruled. As the case must be reversed and remanded for new trial for errors in the instructions, heretofore pointed out, we do not deem it proper to determine whether the court erred in refusing to nonsuit plaintiff or not. There are several material facts left in doubt by the evidence, as presented by this record, which will no doubt be made clear on another trial, and the court will then be better able to determine the questions involved in the demurrer to the evidence than it is now. Judgment reversed, and cause remanded for new trial. All concur.