FULLERTON v. FORDYCE *et al.*, *Receivers of the* ST. LOUIS, ARKANSAS AND TEXAS RAILWAY COMPANY, *Appellants.*

Division One, June 14, 1898.*

1. **Evidence: ORDER: REMARKS OF COURT.** This case, which is one for damages for personal injuries, was here on a former appeal and remanded for a new trial. At the trial the defendant asked the court to appoint a commission of physicians to examine plaintiff. After defendant had rested, without using these physicians, plaintiff, over defendant's objection, was permitted to examine them, the court remarking in the presence of the jury: "The Supreme Court has indicated in this case that it would like to have this court appoint a commission. I have done so in response to that, and I will permit the commission to testify." *Held*, that, the circuit courts having a very

*NOTE.—Decided November 3, 1897, and motion for rehearing denied June 14, 1898.

broad discretion in regard to the order of admitting testimony, it was not error to permit the physicians to testify in this order. *Held*, also, that as it does not appear that these remarks of the judge were prejudicial, they were not error, and that it does not lie in defendant's mouth at whose instance the commission was appointed, to complain of the remarks of the judge which went no further than to inform the jury that the court had appointed the commission.

2. ————: EXPERTS APPOINTED BY THE COURT: WITNESSES OF THE COURT. Physicians appointed by the court to make examination of the physical injuries of plaintiff, become the witnesses of the court, and if the parties refuse to call them the court has the right to do so.

3. ————: ————: UNBIASED WITNESSES: WAIVER. Where a physician, who has been appointed by the court as one of a commission to examine plaintiff, before detailing the result of his examination, informs the court that he has on a previous occasion made an examination, and the defendant, at whose motion the commission was appointed, makes no objection then or afterwards to his qualification, it will be held that defendant waived all objection to his qualification.

4. Negligence: ASS⸱⸱ ᵀ TION: HOLE IN STATION PLATFORM. An instruction that assumes that a hole six feet long and eight inches wide, in a passenger platform four feet above the ground, is unsafe and dangerous, is not erroneous. A defendant railroad was guilty of negligence, as a matter of law, in leaving, for four days, unguarded and unlighted, a hole of such dimensions in its station platform, over which passengers were required to pass on leaving the train. (Distinguishing *James v. Railroad*, 107 Mo. 485.) This same ruling was announced in the same instruction on a former appeal in this case.

5. ————: ————: ————: REASONABLY SAFE CONDITION. Where the facts in a case make it questionable whether, notwithstanding a hole in a platform, it was still in a reasonably safe condition for the uses to which it was ordinarily applied, that question should be submitted to the jury. But where the dangerous condition of the platform is apparent to any reasonable mind, the court should declare it to be unsafe and dangerous as a matter of law.

6. ————: ————: ————: ————: REASONABLE TIME TO REPAIR. And where a hole six feet long and eight inches wide in a depot platform four feet from the ground, was made by the railroad's agents and was allowed to remain in that condition for four days and could have been easily repaired, and plaintiff is injured in falling into it on leaving a passenger train at night time, there being no lights or guards at the dangerous place, the question of the railroad's right of reasonable time in which to make repairs does not enter into the case, and should not be submitted to the jury. But on the contrary under the circumstances, these facts being admitted, the negligence of the road could be properly declared as a matter of law.

Fullerton v. Fordyce.

7. **Evidence:** EXPERT TESTIMONY: PRACTICE. The competency of witnesses to testify as experts is a question for the court to decide; the weight to be given to their testimony is to be determined by the jury.

8. ———: ———: ———: COMPETENCY, HOW RAISED. The competency of an expert witness can not be raised by an instruction directing the jury as to the weight to be given such evidence. It is a matter of exception.

9. **Practice:** CIVIL CASES: INSTRUCTIONS. In civil cases courts are not required to give instructions unless requested.

10. **Negligence:** DAMAGES: PAIN: ASSUMED. Where an instruction required the jury to find as a fact that plaintiff was injured, it is not reversible error if the instruction assumes that physical and mental pain resulted from such injuries.

11. ———: ———: AGGRAVATION OF INJURIES. An instruction that told the jury that before plaintiff can "recover any damage for permanent injury, he must show that he took proper and immediate steps to have his condition improved" is held to be unreasonable, and correctly refused. But one that told the jury if they "believe from the evidence that his injury has been aggravated and his pain and suffering enhanced by his own imprudence or want of ordinary care, then for such increase of pain, or for such aggravation of injury, he can not recover," was properly given, and correctly declared the law as far as it went.

12. ———: ———: EXCESSIVE VERDICT. It is held that, under the circumstances of this case, a verdict for $13,500 will be permitted to stand, although larger than appears to be justified by the evidence.

*Appeal from Scott Circuit Court.*—HON. H. C. O'BRYAN, Special Judge.

AFFIRMED.

*Sam H. West* and *W. H. Miller* for appellants.

(1) The court erred in giving its first and third instructions to the jury, which were given on its motion. These instructions assume, as a matter of law, and affirmatively assert that the hole was unsafe and dangerous, and its existence was negligence, instead of submitting the question for the determination of the

jury as an issue of fact. Whether the hole was unsafe or dangerous, and whether there was negligence in not repairing it was a question of fact for the jury to determine. The defendants were entitled to have the jury pass upon the question of fact. Buswell, Personal Injuries [1 Ed.], sec. 93; 2 Thompson on Trials [1 Ed.], sec. 2295; *Matthews v. Railroad*, 26 Mo. App. 89; *State v. Wheeler*, 79 Mo. 366; *Wilkerson v. Thompson*, 82 Mo. 328; *Bank v. Crandall*, 87 Mo. 212; *Childrey v. Huntington*, 12 S. E. Rep. 536; *James v. Railroad*, 107 Mo. 480. (2) In the fourth instruction, the court assumes that the plaintiff had bodily pain and suffering and suffered mental anguish and inconveniences and also assumes that his hip and spine were injured in the accident. These were questions of fact for the jury. 2 Thompson on Trials [1 Ed.], sec. 2295; *Wilburn v. Railroad*, 36 Mo. App. 215; *Railroad v. Coates*, 15 Am. and Eng. R'y Cases, 265; *Railroad v. Sykes*, 96 Ill. 162; *Rolling Co. v. Morrissey*, 18 Am. and Eng. R'y Cases, 47; *Hawes v. Stockyard Co.*, 103 Mo. 60. (3) The sixth instruction based also on the assumption that plaintiff had suffered injury, told the jury that if his pain and suffering was enhanced and injuries aggravated by his own imprudence or want of ordinary care, that he could not recover for such increase or aggravations. This is erroneous. It was the duty of plaintiff to have taken proper care of himself such as an ordinarily prudent person would have done under similar circumstances. *Sandwich v. Dolan*, 34 Ill. App. 199. (4) The verdict is excessive and should have been set aside on defendants' motion. 2 Thompson on Trials [1 Ed.], secs. 2299–2300; *Britton v. Railroad*, 51 N. W. Rep. 276; *Goetz v. Ambs*, 27 Mo. 28; *Sawyer v. Railroad*, 37 Mo. 240; *Honeycutt v. Railroad*, 40 Mo. App. 674; *Furnish v. Railroad*, 102 Mo. 438; *Hanlon v. Railroad*, 104 Mo. 381; *Railroad v. Hall,*

78 Tex. 657; *Gurly v. Railroad,* 104 Mo. 211; *Burdich v. Railroad,* 123 Mo. 240. (5) In no case should expert or opinion testimony be received except it be based upon facts clearly established. 2 Rice on Ev. 358; *Keyser v. Railroad,* 66 Mich. 390; *Van Wycklen v. Brooklyn,* 118 N. Y. 430; *Russ v. Railroad,* 112 Mo. 45; *U. S. v. Pendergast,* 32 Fed. Rep. 201; *Clark v. State,* 12 Ohio, 499; 2 Rice on Ev. 328; *Hopt v. Utah,* 120 U. S. 437. (6) Expert or opinion evidence is admitted as an exception to the rule and only as a matter of necessity and should always be received and considered with great caution. Rogers on Exp. Test., sec. 199; *Darrigan v. Railroad,* 52 Conn. 285; *Faulkner v. Hendy,* 79 Cal. 265; *Grigsby v. Water Co.,* 40 Cal. 405; *Hayes v. Wells,* 34 Md. 513; *Clark v. State,* 12 Ohio, 499; *Purifier Co. v. Cheatham,* 4 Dill. 448. (7) Expert witnesses ought to be selected by the court and should be disinterested and unbiased as well as learned and skillful. *Fullerton v. Fordyce,* 121 Mo. 10; Rogers Exp. Test., pp. 182, 183, *People v. Millard,* 53 Mich. 63; *Faulker v. Hendy,* 79 Cal. 265; *Grigsby v. Water Co.,* 40 Cal. 405. (8) The opinions of experts should not be given any considerable weight unless it is shown that they are specialists or peculiarily qualified to testify as to the matters about which they propose to express an opinion. Rogers Exp. Test., secs. 91–103; 62 Miss. 405; 14 Gray, 335; *People v. Millard,* 53 Mich. 63; *Railroad v. Huntley,* 38 Mich. 537; *Fayette v. Chesterville,* 77 Me. 28. (9) It was an abuse of the discretion of the court in permitting plaintiff to reopen his case and place upon the witness stand the physicians composing the commission, and especially is that apparent when coupled with the language of the court, which was calculated to give undue credence to the testimony of such commission and to inflame the prejudices of the jury.

*Wilson Cramer* for respondent.

(1)   The hole in the platform was there from four days to two weeks according to the evidence of defendants' witnesses, and from three weeks to two months according to plaintiff's witnesses, and it is shown that the station agent, who was also conductor of the train, was present when the hole was made.   Notice to the agent was notice to the principal.   (2)   There is no evidence or suggestion of prejudice or misconduct of the jury.   They swore on their *voir dire* that they were not prejudiced, and there is nowhere in the record an intimation of misconduct on their part, nor of any unfair argument by plaintiffs' counsel.   *Griffith v. Railroad,* 98 Mo. 176; *Hanlon v. Railroad,* 104 Mo. 392; *Drain v. Railroad,* 86 Mo. 574; *Gorham v. Railroad,* 113 Mo. 423.   (3)   The only new point presented on this appeal is the propriety of the court's ruling in permitting the experts, who examined plaintiff by order of court, to testify after the close of defendants' evidence.   When the case was here before, this court intimated that such an examination by experts ought to be made.   Before the retrial of the case defendants asked the court to appoint a commission for that purpose, and plaintiff was required to submit to a physical examination, but defendants declined to place the experts on the stand.   Plaintiff then asked the court to admit their evidence and it was done.   In this the court committed no error.   The admission of evidence is a matter resting in the sound discretion of the court.   *Taylor v. Cayce,* 97 Mo. 242; *State v. Buchler,* 103 Mo. 203; *McFarland v. Act. Ass'n,* 27 S. W. Rep. 436; *Griffith v. Railroad,* 98 Mo. 176.   (4)   In actions for personal injuries conduct on the part of the plaintiff which increases or aggravates the injuries, may be shown in mitigation.   1 Sutherland on Dam.

[2 Ed.], sec. 155; *Boggess v. Railroad*, 118 Mo. 328. (5) Hypothetical questions put to an expert must embrace all of the facts bearing upon the subject which the evidence tends to prove, but whether the questions are proper is for the court to determine, and not for the jury. The credit to be given to the testimony of experts as of other witnesses is for the jury. *Thompson v. Ish*, 99 Mo. 179. Whether a witness who is offered as an expert is qualified to testify as such is a preliminary question for the court to decide. *Hartman v. Muehlbach*, 64 Mo. App. 565; *Thompson v. Ish*, 99 Mo. 160; *Mut. Fire Ins. Co. v. Alvord*, 61 Fed. Rep. 752. (6) It has been decided time and again by this court, that the order in which evidence shall be received is a matter resting in the discretion of the trial court. *McFarland v. Acc. Ass'n*, 27 S. W. Rep. 440; *Burns v. Whelan*, 52 Mo. 520.

MACFARLANE, J.—This is an action to recover damages on account of personal injuries received by plaintiff through falling into a hole in the platform of defendant at its station at New Madrid, Missouri. The ground of the action is negligence in not maintaining the platform in a reasonably safe condition, by reason of which, on leaving a train at said station, upon which he was a passenger, plaintiff fell into a hole and was injured. The answer was in substance a general denial and a plea of contributory negligence. The evidence tended to prove the negligence charged and the injuries sustained thereby. The trial resulted in a verdict and judgment for plaintiff for $13,500, from which defendants appealed.

This is the second appeal. The result of the first will be found reported in volume 121 of the Missouri Reports, at page 7. A number of questions disposed of on the first appeal have been reargued, but on these

questions we see no reason for changing the views expressed on the former hearing and will not reconsider them.

I. After the case had been remanded, in pursuance of a suggestion of this court, defendant applied to the circuit court for the appointment of a commission of competent and disinterested physicians to make a physical examination of plaintiff with a view of ascertaining the character and extent of his injuries. In compliance with the application the court appointed Drs. Harris, Tomlinson and Fraser to make the examination. Dr. Harris declining to act, an examination was made by the other two. In the trial the parties examined as expert witnesses, physicians called by themselves respectively, but neither party called as witnesses those who had made an examination of plaintiff under the order of the court, until after defendant had closed his defense. At this stage of the proceedings plaintiff was allowed, over defendant's exception to introduce and examine these witnesses. In granting the leave the court remarked in the presence of the jury: "The Supreme Court has indicated in this case that it would like to have this court appoint a commission; I have done so in response to that, and I will permit the commission to testify." Defendants now insist that the court committed prejudicial error in permitting plaintiffs to examine these witnesses out of their regular order, and that the remarks of the court made in the presence of the jury were improper and prejudicial. There was no reversible error in permitting plaintiff to examine these witnesses out of their regular order. The circuit courts have a very broad discretion in regard to the order of admitting testimony, and their discretion will not be interfered with unless it clearly appears to have been abused. There was no abuse of discretion in this instance. These witnesses had made a physical

examination of plaintiff, under an order of court, with a view of ascertaining the character and effect of his injuries. They were appointed at the request of the defendants who neglected to use them as witnesses. Under the circumstances the court properly allowed plaintiff to introduce them after defendants had declined to do so. By the course adopted defendants secured the advantage of a cross-examination of witnesses who had ascertained facts under an order of court made at their request and they have no just ground to complain. Neither does it appear that the remarks of the court, on admitting the testimony could have been prejudicial. The commission was appointed by an order of court, which was a matter of public record. The appointment was made at the request of defendants for the purpose of eliciting the truth and in furtherance of justice. The information given by the court went no further than to advise the jury that the witnesses had made a physical examination of plaintiff by its direction, a fact which either party had the right to elicit from the witnesses themselves. Surely defendants, at whose request the commission was appointed, should not complain of the information the jury incidentally acquired from the remarks of the court. Parties calling for such an examination must take the chances of the results.

The experts who made the examination became the witnesses of the court, rather than of the parties to the action; and if the parties refused to call them the court had the right to do so, in which case greater credit would have been given them, than was given by the remarks complained of.

II. It appears that Dr. Fraser, a member of the commission, had, at the request of plaintiff, previously made an examination of his injuries. It is insisted that the doctor could not, in the circumstances, have been wholely unbiased and disinterested. We do not think

the conclusion necessarily follows. We must assume that the court was advised of the character, professional standing and learning of Dr. Fraser and was satisfied with his qualifications to make the examination and that he would honestly and fairly testify to the results. But aside from that it was not shown that the court was informed at the time the commission was appointed that Dr. Fraser had any knowledge of plaintiff's injuries. The witness, before detailing the result of his examination, informed the parties that he had previously made a physical examination of plaintiff, and no objection was then, or afterwards, made by defendants to his qualification. In the circumstances we must hold that defendants waived all objection to the qualifications of the witness to make a fair and unbiased examination. They took their chances on the result of the examination and can not be allowed to elect to accept it if favorable, and exclude it if unfavorable.

In paragraph five of the opinion in this case, on the former appeal, it is held that, under the undisputed evidence in the case there was no reversible error in the third instruction. The same instruction was given on the retrial. Defendants still insist that the instruction is erroneous in that it assumes as a matter of law that the hole in the platform was unsafe and dangerous, and in that it did not allow them a reasonable time in which to make repairs. They say that the opinion is in conflict with one condemned in the case of *James v. Railroad* (107 Mo. 485), in which it was held to have been a question for the jury to determine whether it was negligence on the part of a railway company to construct and maintain a station platform of planks having auger holes through them from one and a half to two inches in diameter. In this case defendant's agent in charge of the station, and others of its employees, testified that the hole in the platform was

six feet long and eight inches wide, and that it was made
by themselves in moving heavy freight, four days before
the accident.   The difference in the facts, under which
the respective instructions were given, is manifest.
The facts in this case stand virtually admitted by the
evidence of defendant's employees and are disputed by
no witness.   The simple question then is, whether
defendants were guilty of negligence, as a matter of
law, in leaving for four days, unguarded and unlighted,
a hole, of the character described, in their station plat-
form, which was about four feet above the ground and
over which passengers were required to pass on leaving
trains.   We thought they were on the first hearing and
we are still of the same opinion.   Defendants owed to
the public the duty of keeping their platform in a rea-
sonably safe condition.   A failure to perform this duty
was negligence.   That the duty was not performed
stands virtually admitted.   It was said in the *James*
case, *supra*, that the court could not assume "that it is
negligence to permit a hole to remain in a railroad
station platform."   The decision must be interpreted in
the light of the facts upon which it was rendered.   The
"hole" the court had in mind was made with an auger
and was only from one and a half to two inches in
diameter, while the "hole" the court had in mind in
this case, was eight inches wide and six feet long.   Under
the facts in the former case it was questionable whether
the platform was not in a reasonably safe condition
for the uses to which it was ordinarily applied; in the
case at bar the dangerous condition of the platform is
apparent to any reasonable mind.   Defendants were
undoubtedly entitled to a reasonable time in which to
repair the platform and put it in a reasonably safe con-
dition.   What would be a reasonable time in any case
will depend upon the character of the required work.

Defendant's agents caused the defect and knew of its existence for at least four days before the accident. This was ample time in which to have made the trifling repairs necessary. The defect was dangerous and threatened every passenger who left the train, and due care required, at least, some kind of warning to them of the danger. None whatever was given though the train upon which plaintiff was a passenger, arrived in the night time. In the circumstances the negligence of defendants could properly have been declared as a matter of law.

III. A number of physicians were examined as experts who gave to the jury their opinion as to the character, effect and permanency of plaintiff's injuries. In respect to the weight to be given their evidence the court instructed the jury as follows: "With respect to expert testimony, or in other words the opinion of the doctors, you may take into consideration whether such opinions are supported or refuted by other testimony in the cause. You may also take into consideration the professional learning, skill, ability and experience of such experts." Counsel makes this instruction a basis for the argument of several propositions of law in respect to the admissibility of expert testimony and the necessary qualifications of a witness to testify as an expert.

The competency of the witnesses to testify as experts was a question for the court to decide; the weight to be given to their testimony was to be determined by the jury. If, after an examination defendant was of the opinion that a witness was not shown to be competent to testify as an expert, objection should have been made to his competency at the time, and all the evidence given in support of his qualification should have been preserved in order that the appellate court could pass upon the exception. The qualification

of such witness can not be raised by an instruction directing the jury as to the weight to be given such evidence.

It is argued that in no case should expert or opinion testimony be received except it be based upon facts clearly proved. The legal proposition here asserted applies only to hypothetical questions put to an expert witness based upon the evidence. Even in such case it is not essential that the facts be clearly established. A sufficient basis for the opinion of an expert is established when the evidence *tends* to prove all the facts upon which the opinion is hypothecated., *Russ v. Railroad*, 112 Mo. 48. It may be agreed that the evidence of experts would be entitled to much greater weight and the result of trials would be much more satisfactory if the witnesses were disinterested and unbiased, as well as learned and skillful, but the same may be said of any other witnesses; if they would all speak the unqualified and unbiased truth justice would seldom fail. But witnesses, whether they testify to facts, or give their opinions as experts, are not always unbiased or truthful and the jury must determine the weight to be given to their evidence.

Counsel say, and correctly, that expert testimony is admitted as a necessity and should always be received and considered with great caution. It is nowhere shown that the evidence introduced on this trial was not competent. The witnesses were all, so far as appears, respectable physicians and the subject was one which properly called for the testimony of experts. Such witnesses were called and examined by both parties, without objection, and, as heretofore said, there is no basis for the objection to their competency. If defendants thought the jury should have been cautioned in respect to the weight to be given to the testimony they should have asked an additional

instruction.   In civil cases courts are not required to give instructions unless requested.   We find no error in the instruction complained of.

IV.   Defendant insists with much earnestness that the court committed error in the instructions given to the jury in respect to the measure of damages.   It is said that the fourth instruction assumes that the plaintiff suffered physical pain and inconvenience and mental anguish from his injuries.   The instruction requires the jury to find that plaintiff suffered physical injuries from falling into the hole in the platform. The allowance of any damages is made to depend upon those facts.   The jury was further instructed that in estimating the damages "you may take into consideration and account . . . . . . his bodily and mental pain, if you believe from the evidence such is the fact."   It must be agreed that the rule thus given for the guidance of the jury is not entirely clear, but the jury must have understood from it that they could only allow damages for such pain, physical and mental, as plaintiff actually suffered.   But if plaintiff was injured, as charged, which fact the jury was required to find, there would be no reversible error in the instruction though physical and mental pain, as a result, was assumed.   Pain is the natural result of such injuries as the evidence tends to prove plaintiff suffered, and may fairly be assumed to follow as a necessary consequence.

V.   Defendants requested the court to instruct the jury that in order for plaintiff "to recover any damages in this cause for permanent injury or permanent mental suffering or physical pain he must show that he took proper and immediate steps to have his condition improved and did all that a prudent and careful person would have done to have his injuries cured and himself restored to good condition of health."   The court refused to give this instruction, and correctly.   An

injured person should use reasonable care to prevent an aggravation of his injuries and will not be allowed to recover compensation for such as could have been avoided by the exercise of such care and prudence. Aggravation of injuries by subsequent negligent conduct on the part of plaintiff may be considered by the jury in mitigation of damages. But to require one who has been injured to take proper and immediate steps to prevent future consequences is demanding of him a degree of care and an infallibility of judgment which the most skillful physician does not possess. The law requires nothing so unreasonable.

The court, on its own motion, instructed the jury on this question as follows: "If you believe from the evidence that his injuries have been aggravated and his pain and suffering enhanced by his own imprudence or want of ordinary care, then for such increase of pain, or for such aggravation of injury, he can not recover." This instruction declares the correct principle of law as far as it goes. If defendants had wished to have the jury instructed in respect to the duty of plaintiff in the matter of caring for his injuries a proper instruction should have been requested. The duty of plaintiff can, however, be very easily inferred from the instruction given.

VI. We have considered the evidence, and the instructions on the question of damages very carefully in view of the large amount of the verdict, in order to see if anything appeared therefrom to indicate that the verdict was the result of passion or prejudice. The evidence shows that the injuries were not at first regarded as being serious, but that the condition of plaintiff has continued to grow worse until, according to the evidence of some of the physicians who examined him, and that of plaintiff himself, he suffers from incontinence of urine, injury of the spine, insomnia, impairment of memory, loss of sexual powers and hernia.

The evidence tends also to prove that plaintiff's physical and mental condition is the result of the injury complained of, and that the injury to the spine is permanent and progressive. If the facts testified to were believed by the jury, and if the opinions of the expert witnesses were accepted as correct, and these were matters for the jury to determine, then we can not say that the amount of the verdict shows conclusively that it was the result of passion, prejudice or sympathy of the jury. This is the second verdict on substantially the same evidence, the first was for $15,000. Each of the verdicts was approved by the trial court and this court has no power to interfere with the result of the trial for the reason alone that the verdict appears to us to be larger than is justified by the evidence.

The judgment is therefore affirmed. All the judges of this division concur.